UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.:   3:09-cr-00387-TJC-MCR

UNITED STATES OF AMERICA

vs.

ROBERT ALLAN COWAN

_____/

## MOTION FOR NEW TRIAL AND MOTION FOR JUDGMENT OF ACQUITTAL

**COMES NOW**, the Defendant, by and through the undersigned counsel and files this Motion for New Trial and Motion for Judgment of Acquittal and says:

1. On or about December 9, 2009, a federal grand jury indicted defendant on seven child pornography related felony charges. (Doc. 1)

2. The case proceeded to trial on October 4, 2010 and an adverse jury verdict was entered on October 7, 2010. (Docs. 66, 72)

3. At trial, the defense argued that the government failed to prove "knowing and willful" use of the minor to create sexually explicit visual depictions of sexually explicit conduct. The defense also argued that the depictions were not purposed to incite lust; the pictures were of the child running around the room getting ready for a shower after the beach. The defense questioned how the government could argue that some pictures in the same series were used to incite lust while others were not. The defense maintained that the purpose was not to distribute the pictures interstate commerce because Cowan took the pictures and put them on a computer hard drive. The defense argued Cowan did not know the depictions were there because he always deleted the child pornography when it came up in his online searches. Additionally, there were

Page 1

over 17,000 proper photos of the child. The defense argued the government never produced a video of the child and Cowan.

4.      The court committed reversible error when it denied defendant's Motion for a directed verdict of acquittal; the jury instructions were inadequate on the pivotal issue of mens rea/scienter and the evidence lacking.

5.      The impropriety of the primary principal witness is glaring and inexcusable. Special agent Greenmun's testimony is irreconcilable, incredible and incapable of supporting a finding of "knowingly" beyond a reasonable doubt, much less that the government's exhibits were indicative of pornography, thereby invading the jury's province.

**WHEREFORE**, Defendant humbly requests that the court grant this motion, enter a judgment of acquittal or at the very least, a new trial and any other relief just and equitable.

## Memorandum of Law

Federal Rules of Criminal Procedure, Rule 29 (c) provides (in relevant portions):

**(c) After Jury Verdict or Discharge**

(1)    **Time for a Motion**. A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, which ever is later.

(2)    **Ruling on the Motion**. If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. If the jury has failed to return a verdict, the court may enter a judgment of acquittal.

(3)    **No prior Motion Required**. A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge.

On the other hand, Federal Rules of Criminal Procedure, Rule 33 provides (in relevant portions):

Rule 33. New Trial

(a)    **Defendant's Motion**. Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of Justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

## Statement of the Facts
### (Trial Testimony)

Carol Lynn Crumpton, a daycare worker with 20 years of day care experience at Dunn's Creek Baptist Church Day Care, testified in the government's case. Crumpton testified that on August 18, 2009, defendant Cowan dropped his daughter off to daycare. (Doc. 89, 27). Ms. Crumpton testified August 18th was the second day school that as soon as the child entered the class room the child immediately made statements of concern. (Doc. 89, 28). Ms. Cowan

Page 3

testified the child's statements gave her concern the child was being sexually molested by her father. Ms. Cowan testified the child had been in her class for the preceding year and was "very bright." (Doc. 89, 26). Ms. Cowan testified this was the first incident in 20 years that a child's statement gave her concern about sexual molestation. (Doc. 89, 28). Ms. Cowan immediately reported her concern to her boss, Joyce Owens. (Doc. 89, 29).

Detective Mechele Soehlig, a 10 year detective with 4 years in sex crimes testified to going to the home of Christine Cowan. (Doc. 89, 50) Ms. Cowan consented to the officers taking some items from the home. (Doc. 89, 52, 54) (Exhibit 3). Detective Soehlig testified the child pointed out the computer that her father, Mr. Cowan used. Detective Soehlig testified to pictures taken at the Cowan home. (Exhibit #4, #5, #6, #7 and #8 photos of the home and photos of items including the work station, backup memory sticks and computer)(Doc. 89, 58). In addition to the items in the photos, they took items from the home including the computer mouse, CDs that were on the desk, the memory sticks that were in plain view on the desk. (Doc. 89, 59,60).

On cross the detective could not remember if the Maxtor was connected to the computer or printer. (Doc. 89, 63).

Larry Samuel Baker, an 11 year JSO Detective having a prior work history as a Santa Monica Office and US Navy in-flight paramedic, (Doc. 89, 79) responded to a call from CPI Vaughn. Detective Baker and Detective Devevo went to Dunn's Creek Day Care. Upon arrival, Detective Baker interviewed Carol Crumpton and Joyce Owens. Detective Baker directed Detective Soehlig to secure equipment from the Cowas' home (Doc. 89, 86). Detective Baker testified the reason he wanted to secure equipment from the Cowans' home was because the child stated she had made a movie with her dad. (Doc. 89, 84).

Detective Baker testified that Cowan brought his laptop an Apple G4 PowerBook and his personal Apple I-phone to the interview. He testified that Cowan was a middle school counselor at Fort Caroline Middle School in Duval County, Florida. (Doc. 89, 87). Cowan told Detective Baker that the child was "incredibly intelligent and read on a second grade level" that she loved "educational games and to play on the computer." (Doc. 89, 92). The defendant stated Ms. Cowan was at work on August 14, 2009. During the interview the defendant said "as long as nobody else has touched [his daughter] then [he felt] good because [he] hasn't done anything

inappropriate." (Doc. 89, 93).

Detective Baker testified that Cowan stated the child heard him refer to her vagina as a "twat" and they let her keep saying it as a joke. (Doc. 89, 94).

Detective Baker testified that Cowan said he showed the child a video on the computer which he referred to as a "Chicago video" or "something someone had posted on Facebook." (Doc. 89, 95). Detective Baker testified that Cowan said "he did not have porn" then he said "he did not do porn." (Doc. 89, 95). Detective Baker arrested Cowan. (Doc. 89, 96). Detective Baker then sought out the assistance of a computer forensic examiner named Special Agent Greenmun. (Exhibit #9 17-inch Apple Computer from the home, Doc. 89, 96)(Exhibit #10 Maxtor External Hard Drive). School Board Detective, John McCallum, assisted with obtaining items from the school. (Exhibit #12 Toshiba external drive)(Doc. 89, 97).

Detective Brown received the 24 inch computer from Ms. Cowan on August 20, 2009. (Exhibit #11 24inch computer)(Doc. 89, 99). Detective Brown obtained a search warrant for the defendant's storage shed (Doc. 89, 101) (Exhibits #13, #14 and #15 depict items from the storage shed including a green canvas bag, numerous books of child erotica, a book titled Show Me, and a collage of magazines)(Doc. 89, 102-104).

On cross, Detective Brown stated he did not find a video of Cowan and his daughter. (Doc. 89, 105). Detective Brown testified that the child's statement about making a movie with her dad was never substantiated (Doc. 89, 105). Detective Brown stated he did not believe the child made a mistake about the video. (Doc. 89, 106). On cross, Detective Brown stated that the Show Me book was a best seller that could be obtained at any book store similar to Barnes & Noble. On redirect, Detective Brown stated the types of magazines, however could not be obtained at Barnes & Noble. (Doc. 89, 107). On recross, Detective Brown stated the books found in the storage unit were not illegal, or contraband. (Doc. 89, 107).

Marquis Pickett, Secret Service, Air Force, testified that he assisted with extracting images from the Apple 1-phone. (Exhibit #16). Pickett testified that some of the images were deleted from the I-phone and he could not determine what the images were. (Doc. 89, 112). However, Special Agent Greenmun did determine what the deleted images were.

(Doc. 89, 116).

Derrick Donnelly, CTO of Blackbag technologies, computer forensics specialist, prior Apple IT Security manager/ prior federal law enforcement officer in Canada testified that he completed a forensic analysis of the I-phone(Exhibit #1A (Doc. 89, 124).

James Edward Culbert, Duval County Public Schools information security manager

with 12 years of forensics training testified that he analyzed the defendant's school computer, the school system and other computer media including the desktop computers from Arlington Middle School and Fort Caroline Middle School. (Doc. 89, 129). Culbert conducted a forensic analysis of the two computers. Neither computer yielded any evidence of child pornography (Doc. 89, 129 line #25). Culbert gave the External hard drive (Exhibit 12) to John McCallum, Duval County Public School In House Investigator and Detective Larry Baker. On Cross, Culbert testified they secured the hard drive as part of due diligence even though it was not a school board issued device. (Doc. 89, 131).

Special James Greenmun, Special Agent Homeland Security/ Immigration and Customs Enforcement, was submitted as an expert in forensic technology (Doc. 89, 168). Greenmun testified to his forensic analysis of Cowan's computers.

Greenmun testified that Smart phones allow you to tell the date and time the picture

was taken as well as the GPS coordinates for the exact location where the picture was taken. (Doc. 89, 174) the Apple I-Phone picture was taken on August 14, 2009 around lunch time at the beach but was a pornographic picture (Doc. 89, 174).

The pictures inside the Toshiba Drive were taken on the North side on Alta or Yellow Bluff Drive on the North side. (Doc. 89, 175). The pictures inside the Toshiba Drive were taken inside the driveway of the Cowans' residence at 15123 Reef Drive South Jacksonville, Florida. There were pictures inside the residence in a master bathroom, the hallway. Thee were pictures inside the residence in a mater bedroom, master bathroom, the hallway. There were 37 images depicting the daughter (Doc. 89, 175). There were pictures that focused on his daughter's genital region (image 1495.jpg and 1496). There were pictures of his daughter in various stages of undress. There were images of his daughter in the bathroom with a lewd display of the child's genital region (Doc. 89, 176). There were images that showed the

daughter in a provocative position in the bed, in the master bedroom and a striptease in the hallway of the residence. There were a total of 37 images in the series; 22 of the 37 constituted child pornography. (Doc. 89, 176).

Agent Greenmun also found images that depicted other minors engaged in sexual activity on the Toshiba hard drive. (Doc. 89, 176).

The Toshiba hard drive contained seven movies and nine still pictures or images of child pornography of the 4 yr old child and other children. (Doc. 89, 177 and 78). There were approximately 300 deleted files with file names indicative of child pornography. Greenmun did not see the 300 deleted files because they were deleted past the point of being recovered (Doc. 89, 178). Greenmun did however recover 7 videos and 9 images that were indicative of child pornography. (Doc. 89, 178).

Agent Greenmun identified naming conventions that are used by people in search of child porn. The naming convention in this case was Lime Wire (Doc. 89, 179).

The 37 pictures found on the Toshiba hard drive were taken with the Apple I-Phone. (Doc. 89, 182). The person would take the picture on that I-phone connect it to the I-Mac computer system then transfer it to Toshiba hard drive.

The I-Mac contained 6 videos and 75 images. Some of the ages on the I-Mac were duplicates from the Apple I-Mac 17. Pictures of the defendant's daughter were in subfolders of the I-Mac.

There was one video of child pornography on the Apple Power Book G4 laptop computer which Cowan had at the school office on August 18' 2009. (Doc. 89, l 83). In addition to the video and images search terms were found including "preteen, teen, pedo, pthc (preteen hard core), bbayshivid" all terms commonly used by people who trade child pornography (Doc. 89, 185). Additional search terms included "Hussyfan, pjk, kingpass, alexandra, qqaazz, Lolitaguy, Carl David Hyman, R@ygold, Kindergarten, babysitter, cum on her face, kids need sex too". (Doc. 89, 186). Agent Greenmun was not sure if the term "alexandra" was commonly used by

child pornographers. There are other terms that did not differentiate between adult and child pornography such as "cum on her face, me naked, exclamation point, 2005! nice tits, Charlene."

Greenmun also located child pornography in a folder named slash volumes on the I-Mac 24. The slash volumes folder was intended to be saved on the Toshiba external drive but the drive was not plugged in so the child pornography saved in slash volumes directory (Doc. 89, 188). Greenmun found 2 pictures and 12 videos of young children engaged in child sexual activity on the I-Mac 24. Two of the videos on the I-Mac 24 were charged in Count 1 and 2.

The video in Count Three was found on the Apple I-Mac 17. There was evidence on both the I-Mac 24 and the 1-Mac 17 of the Lime Wire file sharing program. (Doc. 89, 188). Lime wire is used through the internet. Count Six and Seven listed the 160 images of children engaged in sexual activity using the Cowan profile name found on the Maxtor. (Doc. 89, 190). The Maxtor backup was on the Power book G4 laptop. The Maxtor external drive contained 162 images and four videos of child pornography. The Apple I-phone had an August 14, 2009 message titled "Guess where we are," from sender Cowanr @me with a picture of his daughter. (Exhibit 17 Doc. 89, 192).

Count Four lists the images of the 4yr old child displaying her genitalia found on the Toshiba external hard drive under a folder called untitled folder. (Exhibit 18- 35)(Doc. 89, 194). The pictures in Count Four include pictures taken in Mr. Cowan's Honda Accord enroute from the beach area to the North side. The pictures in Count Five were taken in the residence on Reef Drive South. (Doc. 89, 197).

Exhibit 18 showed the child fastened in a car seat the child's hands were on her legs; camera was focused on the child's stomach area was showing through an open robe exposing her genital region. Exhibit #19 he same picture except the child's hands were folded and her fingers are interlocked; the genital region was the focus of the camera. Exhibit #20 and Exhibit #21 were the same as Exhibit# 19. Exhibit #22 except the camera's focus was changed from picture view to landscape view. (Doc. 89, 199). Exhibit #23 and #24 were the same as Exhibit #22 (Doc. 89, 200).

Exhibit #25 was a picture of the 4 year old standing in the hallway of the Cowan residence, robe on the ground by her feet and flip flops; the child was smiling while grabbing her genital region with her right hand. Exhibit #26 is a picture of the 4 year old lying on the ground completely nude on the rug in the master bathroom of the Cowan residence with her legs slightly spread open exposing her genitals to the camera (Doc. 89, 200). Exhibit #27 is the same as #26. Exhibit #28 Is the same as #26 except the child's arm is behind her back and she is arching her back to point her genital region to the camera.

Exhibit #29 The child is in the master bedroom with her arms behind her back arching her back legs slightly spread open exposing her genitals to the camera. Exhibit #30 the child is lying completely nude on the master bedroom rug with her arms crossed above her chest, legs slightly spread open exposing her genitals to the camera. Exhibit #31 the child is lying completely nude on the master bedroom rug her hands are back propping herself up genitals exposed to the camera. Exhibit #32 the child is lying completely nude on the master bedroom rug her hands are back propping herself. She is sticking her tongue out at the camera her legs are slightly spread open exposing her genitals to the camera. Exhibit #33 is the same as #32 except the child's legs are completely open. Exhibit #34 Is the same as #33 except the child is looking away from the camera. (Doc. 89, 203).

Exhibit #35 was not charged however it shows the child in the car seat legs crossed, genitals are not exposed but the robe is open. Exhibits #36-39 are digital photographs taken by Agent Greenmun. Exhibit #36 is a picture of the child's car seat secured in the back of Cowan's black Honda. Exhibit #37 is the Cowan master bedroom. Exhibit #38 is the hallway of the Cowan residence. Exhibit #39 is a picture of the headboard on the Cowan's master bedroom. (Doc. 89, 209). Exhibits #41, #42 and #43 are the GPS pinpoint coordinates showing where the pictures were taken. (Doc. 89, 211). Exhibit #40 is a chart created by Agent Greenmun that shows each picture and where it was taken.

Agent Greenmun testified the GPS coordinates are not only 100% accurate that the locations come from phone towers in the area. (Doc. 89, 213).

Exhibit #44 shows search pages with child pornography search term that were found on the G4 laptop and Macintosh laptop. (Doc. 89, 213). Exhibit #45 is a compact disk of a video titled "...hot spermed little girls mix..." this video is listed in Count one. Exhibit #46 is a compact disk of a video titled "...Kinderflicker Pthc Ptsc Hussyfan--...R@ygold Kingpass Qqaazz I...this video is listed in Count Two. Exhibit #47 is a compact disk of a video titled "...Pthc ...cum inside pedo...preteen fuck...." This video is in Count Three which was downloaded from LimeWire. (Doc. 89, 222). Exhibit #48 is a compact disk of a video titled "2yo girl cries while daddy fucks her ass..." this video is listed in Count 6. Exhibit #51 contains a picture titled "...pedo baby girl gets finger flicked..." which is listed in Count Six. Exhibit #53 is a compact disk of a video titled "...Pthc 9yo Jenny Blows Dad & Dog..." which is listed in Count Seven (Doc. 89, 223). Exhibit #54 a photo titled "pthc Maryanne New November Cum on my Daughter pedo incest 6yo girl Italy..." (Doc. 89, 223). Exhibit #55 a photo titled "...Pthc Pedo lyo Girl About to be Fucked..." (Doc. 89, 224).

On cross examination, Agent Greenmun was not sure that typing a common term like "torpedo" would not also bring up the same pornographic files the search term "pedo" would bring up (Doc. 89, 240, 246). He also testified the a person could have done a massive download without looking at the files. (Doc. 89, 245, 247).

– Daubert violation

In **Daubert**, the United States Supreme Court generally discussed the district court's role as a gatekeeper in determining wether **expert** testimony on scientific matters is admissible under *Fed, R, Evid. 702*. The **Daubert** Court also set out a list of "general observations" for determining whether **expert** testimony is sufficiently reliable to be admitted under *Rule 702,* including (1) whether it can and has been tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field. See, *Daubert*

*v. Merrell,* 509 U.S. 579, 589 (1993).

The above testimony has very little to do with assisting the jury with non-lay person testimony matters; it is a back-door attempt to introduce salacious and prejudicial information at trial, and also the invade the jury fact finding duties.

– Jury charge violation

At trial, the district judge merely instructed the jury as follows:

> ... The word "knowingly" means that an act was done voluntarily and intentionally and not because of a mistake or by accident.
> The word "willfully" means that the act was committed voluntarily and purposely, with the intent to do something the law forbids; that is, with the bad purpose to disobey or disregard the law. While a person must have acted with the intent to do something the law forbids before you can find that the person acted "willfully," the person need not be aware of the specific law or rule that his conduct may be violating... (in relevant portions)[1].  (Doc. 71, 17)

– Lack of evidence-knowingly

Defendant consistently denied culpability nor knowingly receipt of minor pornographic material. The error is not harmless.

In United States v. Milton Pruitt, __F.3d__ No: 10-10829 (11th Circuit April 13, 2011), the court held:

> The ordinary meaning of "receive" is "to knowingly accept"; "to take possession or delivery of"; or "to take in through the mind or senses." Webster's Third New International Dictionary: Unabridged 1894 (1993); see also 13 Oxford English Dictionary 314 (2d ed. 1989).
> A person "knowingly receives" child pornography under 18 U.S.C. § 2252A(a)(2) when he intentionally views, acquires, or accepts child pornography on a

---

[1] This portion of the jury charge was woefully inadequate in a case like this, warranting a more definitive charge on, scienter and "knowingly".

computer from an outside source.[2]

Under this statutes's "knowingly receives" element, an international viewer of child-pornography images sent to his computer may be convicted whether or not, for example, he acts to save the images to a hard drive, to edit them, or otherwise to exert more control over them. Cf. United States v. Romm, 455 F.3d 990, 998 (9th Cir. 2006) (finding sufficient for "receiv[ing]" under Section 2252A that "Romm exercised dominion and control over the images in his cache by enlarging them on his screen, and saving them there for five minutes before deleting them") Evidence that a person has sought – searched for – child pornography on the internet and has a computer containing child-pornography images – whether in the hard drive, cache, or unallocated spaces – can count as circumstantial evidence that a person has "knowigly receive[d]" child pornography.

Inadvertent receipt of child pornography is not a violation of the statute. We stress that Section 2252A(a)(2) criminalizes only "knowing[]" receipt. This element of scienter carries critical importance in the internet context given spam and the prevalence and sophistication of some computer viruses and hackers that can prey upon innocent computer users. For background, see Note, Child Pornography, the Internet, and the Challenge of Updating Statutory Terms, 122 Harv. L. Rev. 2206, 2211-14 (2009) (describing ways a person could unintentionally receive child pornography).

Under the statute, courts will address "knowing[] recei[pt]" mainly as issues of fact, not of law; and the specter of spam, viruses, and hackers must not prevent the conviction of the truly guilty. But prosecutors, judges, and juries have a duty to safeguard -- as best as they are able -- potential defendants when receipt of child pornography might well have been truly inadvertent. Given the stigma associated with even being accused of this kind of crime, the incentives as well as the opportunities for smears are readily present. .. Id.

In order for the evidence to support a conviction under 18 U.S.C. §

2252A(a)(2)(A), it must be sufficient to establish that the defendant knew that the

material he was receiving into his possession constituted child pornography, with the

---

[2] This textually based interpretation of the "recei[pt]" statute is consistent with statements we made in an earlier case, United States v. Bobb, dealing with this same statute, 577 F.3d 1366 (11th Cir. 2009). In Bobb, we concluded that congress did not intend to impose multiple punishments for child pornography "possess[ion]" and 'recei[pt]" under Section 2252A. Id. at 1373-74. In coming to this conclusion, the Bobb Court noted, "[g]enerally federal statutes criminalizing the receipt of contraband...require a knowing acceptance or taking of possession of the prohibited item." See id. at 1372 (citing cases).

specific intent to exercise dominion and control over such material, and that the defendant must knowingly possessed the child pornography upon its receipt. However, the evidence in this case does not establish that Cowan sought out images of child pornography with the specific intent to possess them, nor does indicia of control show that Cowan knowingly received any of the images on either the computer(s) in question. In addition, the evidence does not establish that Cowan knowingly possessed the child pornography on either computer(s) after its receipt. The evidence is, therefore, not sufficient to sustain the conviction against Cowan as to all applicable counts.

Respectfully submitted,

LAW OFFICES OF
NOEL G. LAWRENCE, P.A.

/s/Noel G. Lawrence
Noel G. Lawrence, Esquire
101 East Union Street, Suite 200
Jacksonville, Florida 32202
(904) 356-9928        Fax (904) 356-6762
Florida Bar No.: 844251
*Attorney for Defendant, Robert Cowan*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this  18th   day of  April , 2011, I electronically filed

the foregoing document with the Clerk of Court by using the CM/ECF system which will send a

notice of filing to:

> D. Rodney Brown, Esquire
> 300 North Hogan Street, Suite #700
> Jacksonville, Florida 32202

> /s/Noel G. Lawrence
> Noel G. Lawrence, Esquire

cc:    Robert Cowan