UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:09-cr-387-J-32MCR

ROBERT ALLAN COWAN

_____

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR NEW TRIAL AND MOTION FOR JUDGMENT OF ACQUITTAL**

The United States of America, by and through the undersigned Assistant United States Attorney, files this response in opposition to defendant's motion for new trial and motion for judgment of acquittal (Doc. 106). For the reasons set forth below, the Court should deny defendant's motions.

**Memorandum of Law**

**I.  The "interest of justice" does not require a new trial because the evidence of defendant's guilt was exceedingly strong.**

In his motion, defendant seeks a new trial pursuant to Rule 33, Federal Rules of Criminal Procedure. Rule 33 provides in pertinent part that the Court "may vacate any judgment and grant a new trial if the interest of justice so requires." See Fed. R. Crim. P. 33. Although granting a new trial is within the Court's discretion, the Eleventh Circuit has cautioned that a decision to do so is disfavored:

> While the district court's discretion is quite broad, there are limits to it. The court may not reweigh the evidence and set aside the verdict because it feels some other result would be more reasonable. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand. Motions for new trials based on weight of the evidence are not favored. Courts are to grant

> them sparingly and with caution, doing so only in those really "exceptional cases."

United States v. Cox, 995 F.2d 1041, 1043 (11th Cir. 1993) (citation omitted); see also Butcher v. United States, 368 F.3d 1290, 1297 (11th Cir. 2004).

This is not one such "exceptional case." The weight of the evidence at trial convincingly established that defendant committed the offenses with which he was charged, that is, production, receipt and possession of child pornography. The evidence included the testimony of Dunn's Creek Baptist Church Day Care worker Carol Crumpton and director Joyce Owens. Crumpton testified that on August 18, 2009, one of her 4-year-old female students (the "Child") made statements that gave Crumpton concern that the Child was being sexually molested by defendant. Doc. 89 at 28. Crumpton reported this to the day care director, Owens, who immediately called the child abuse hotline. Doc. 89 at 36-37. Former Florida Department of Children and Families ("DCF") Investigator Lori Vaughn testified that she responded to the call from Dunn's Creek Baptist Church Day Care, interviewed the Child, coordinated with JSO Sex Crimes Detectives Larry Baker and Jacob Devevo, and transported the Child to the child protection team. Id. at 45-47. JSO Detective Mechele Soehlig testified that she responded to defendant's residence on August 18, 2009, met with defendant's then-wife, and obtained consent to obtain, among other things, an Apple iMac (17 in.) computer (Govt. Ex. 9) and a Maxtor external hard drive (Govt. Ex. 10). Doc. 89 at 60-61.

Detective Larry Baker testified that he responded to a call from Dunn's Creek Baptist Church Day Care from DCF Investigator Vaughn regarding a child who had given history of sexual molestation. Doc. 89 at 81-82. Through Detective Baker's testimony, the United

States introduced into evidence several exhibits (Govt. Exs. 1, 2, 11, 13, 14, and 15), including the Apple iPhone that defendant used to produce images of the Child. The testimony of Detective Baker established, among other things, the following facts regarding defendant's August 18, 2009 interview at the Jacksonville Sheriff's Office:

1. Detective Baker advised defendant had been invited for an interview to talk about the Child. Doc. 89 at 90.

2. Defendant stated that the Child "was the center of his world." Doc. 89 at 93.

3. Defendant stated, "[A]s long as nobody else has touched [the Child], then I feel good, because I haven't done anything inappropriate." Doc. 89 at 93.

4. Defendant acknowledged that he taught the Child to refer to her vagina by an inappropriate and vulgar term. Doc. 89 at 94.

5. Defendant denied possessing pornography, stating "I don't do porn." Doc. 89 at 95.

Detective Baker further testified that he and other officers gathered and took custody of other computer media and items used and possessed by defendant. Doc. 89 at 96-104. Specifically, defendant's Toshiba external hard disk drive (Govt. Ex. 12) was obtained by Duval County School Board Detective John McCallum from defendant's office at Ft. Caroline Middle School, and Detective Baker consensually obtained defendant's Apple iMac (24-in) computer (Govt. Ex. 11) from defendant's then-wife. Detective Baker obtained a search warrant to examine defendant's computer media. Doc. 89 at 100. The detective obtained a second search warrant for defendant's storage shed, and found books and magazines containing child erotica. Doc. 89 at 101-104.

U.S. Immigration and Customs Enforcement ("ICE") Special Agent ("SA") James Greenmun, who is a computer forensic agent, testified regarding the analysis of defendant's computer media and the visual depictions of child pornography discovered therein. SA Greenmun discovered images of the Child, taken with an Apple iPhone on August 14, 2009, residing within an untitled folder within a folder titled "check" on defendant's Toshiba external hard drive (Govt. Ex. 12). Doc. 89 at 173-74. Also located in the "check" folder were seven movies and nine still images of minors engaged in sexually explicit conduct. Doc. 89 at 177. SA Greenmun concluded through his forensic analysis that the charged images of the Child were taken using the Apple iPhone (Govt. Ex. 1), which was connected to the Apple iMac (17 in) computer (Govt. Ex. 9), then transferred to the Toshiba hard drive (Govt. Ex. 12). Doc. 89 at 182. In defendant's Apple PowerBook G4 laptop computer, a text document containing search terms indicative of child pornography, including "kids need sex too" (Govt. Ex. 44), was located. Doc. 89 at 184-87. There were two pictures and 12 videos of children engaged in sexual activity contained in the Apple iMac (24 in) computer, and this computer and the Apple iMac (17 in) computer contained the file sharing program LimeWire. Doc. 89 at 188. Defendant's Maxtor external drive contained 162 images and four videos of child pornography. Doc. 89 at 190-91.

Through SA Greenmun's testimony, the United States introduced the pornographic images that defendant produced of the Child (Govt. Exs. 18-34) using his Apple iPhone. These images are lewd and graphic, and through its verdict the jury found that they portrayed the lascivious exhibition of the Child's genitals. Also introduced were the other charged videos and images depicting the sexual abuse of minors that defendant had downloaded from the internet and collected on his computer media (Govt. Exs. 45-55). A

4

summary chart and maps showing the location and times that defendant took the pornographic images of the Child were also introduced (Govt. Exs. 40, 41, and 42).

Defendant chose to testify during the trial and presented as an intelligent and educated individual. During direct examination, he discussed his familiarity and experience with computers, which is substantial. Doc. 90 at 49-54. Defendant admitted taking the pictures of the Child with his Apple iPhone and storing them on his computer media. Doc. 90 at 74-79. Defendant testified that when he observed these images on his computer, he "wasn't really comfy with" them, and stated that he stored them an "untitled" folder within the same folder as other child pornography located on his Toshiba external hard drive. Doc. 90 at 74-79. Defendant stated that he "was trying to weigh the decision" about whether to show his wife the "inappropriate" pictures of the Child, vacillating between "keep, show, keep, show, keep, show." Doc. 90 at 112. He acknowledged that some of these images depicted the Child "displaying her vagina." Doc. 90 at 113. However, defendant steadfastly denied that the pictures of the Child were pornographic because they would not "incite lust in any person." Doc. 90 at 80. The jury obviously disagreed. Defendant testified that he took pictures of the Child as she was "scurrying around" in his residence. Doc. 90 at 142-43. The pictures show otherwise. Defendant testified that he "never gave [the Child] any direction" as he took the charged pictures. Doc. 90 at 143. Yet, several of the pictures indicate the Child appearing to strike poses for the camera. Defendant's testimony on these points conflicted with the photographic evidence.

In short, the testimony of the witnesses called by the United States was consistent and was not marked by "uncertainties and discrepancies." United States v. Martinez, 763 F.2d 1297, 1313 (11th Cir. 1985). The jury chose to credit their testimony. To the contrary,

the jury chose to disbelieve defendant's testimony that he did not knowingly download or possess child pornography. Doc. 90 at 64, 69. Despite defendant's claim to the contrary, the jury determined that the charged images of the Child qualified as child pornography under the Court's instructions. Thus, through its verdict, the jury determined that defendant was not telling the truth regarding these material facts. When such a credibility determination is made by the jury, the resulting verdict is not against the weight of the evidence. See United States v. Zuno-Arce, 44 F.3d 1420, 1422 (9th Cir. 1995).

The Eleventh Circuit has noted that "[w]hen a defendant chooses to testify, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true." United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995). Although defendant did make admissions at trial, several of which are highlighted herein, his testimony was incredible on several points, evasive and defensive on others, internally inconsistent, and contradicted by other evidence and testimony presented by the United States. His entire testimony was properly considered by the jury in reaching its verdict, and may also be considered by this Court in denying defendant's motion for a new trial. United States v. Turner, 474 F.3d 1265, 1279 (11th Cir. 2007).

Accordingly, the weight of the evidence points to the certainty of the case against defendant. Because the evidence presented was more than enough to enable a jury to satisfy the "interest of justice" through its verdict, this Court should decline to disturb the verdict by granting a new trial.

### II.  Defendant's motions for judgment of acquittal made during trial were properly denied, and his post-trial motion should also be denied.

Rule 29(a), Federal Rules of Criminal Procedure, provides in pertinent part that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which

6

the evidence is insufficient to sustain a conviction." See Fed. R. Crim. P. 29(a). The test for reviewing the sufficiency of the evidence is whether a reasonable mind could fairly find defendant guilty beyond a reasonable doubt, viewing the evidence including all reasonable inferences and credibility choices in the light most favorable to the government. United States v. De Jean, 613 F.2d 1356, 1358-59 (5th Cir. 1980); United States v. Kelly, 888 F.2d 732, 740 (11th Cir. 1989). The evidence does not have to "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." United States v. Hernandez, 433 F.3d 1328, 1334-35 (11th Cir. 2005) (citation omitted).

> Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Id. at 1335 (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

As set forth above and below, and viewing the evidence in the light most favorable to the United States, it is clear that the jury could have easily found, beyond a reasonable doubt, the essential elements of the offenses with which defendant was charged. Defendant's motions for judgment of acquittal made at trial were properly denied, and the Court should deny his post-trial motion as well.

### III.     There was no *Daubert* "violation" at trial.

In his motion, defendant complains that SA Greenmun's testimony constituted a "violation" of Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Defendant is mistaken. SA Greenmun provided factual information about the investigation of defendant, and his testimony was relevant, admissible, and included certain technical

7

aspects of computer technology that assisted the jury in understanding the evidence and determining facts at issue. See F.R.E. 702. Therefore, no Daubert "violation" exists.

### IV. The Court properly instructed the jury.

In his motion, defendant seems to take issue with the Court's instructions to the jury regarding the definition of the term "knowingly." Doc. 106 at 11. The Court provided the following definition to the jury both orally and in writing: "The word 'knowingly' means that an act was done voluntarily and intentionally and not because of a mistake or by accident." Doc. 71 at 17. This instruction mirrored that approved by the Eleventh Circuit in its Pattern Jury Instruction 9.1A (2010). Therefore, the Court properly instructed the jury on this definition, and defendant's argument fails.

### V. The evidence admitted at trial proves that defendant knowingly received and possessed depictions of child pornography.

In his motion, defendant states that he "consistently denied culpability nor knowingly receipt of minor pornographic material," and the evidence of knowing receipt and possession of child pornography is not sufficient to sustain the convictions therefor. Doc. 106 at 11-13. In support, defendant relies upon the Eleventh Circuit's decision in United States v. Pruitt, ___ F.3d ___, 2011 WL 1380687 (11th Cir.). Defendant's reliance on Pruitt is misplaced. In Pruitt, the Eleventh Circuit found that:

> Evidence that a person has sought out – searched for – child pornography on the internet and has a computer containing child pornography images – whether in the hard drive, cache, or unallocated spaces – can count as circumstantial evidence that a person has "knowingly receive[d]" child pornography.

Id. at *2. The court went on to determine that there was sufficient evidence to establish that the defendant in Pruitt "knowingly receive[d]" child pornography on his home computer in that (i) the evidence showed that about 70 child pornography images existed in the

8

computer's cache, (ii) over 200 images existed in the computer's unallocated space, (iii) investigators found a record of internet searches using terms related to child pornography, (iv) a record of visits to websites with a child pornography connection, and (v) defendant admittedly sought out and viewed child pornography on an entirely different computer around the same time.  Id. at *3.

In this case, the testimony and evidence at trial firmly established defendant's knowing receipt and possession of child pornography.  As set forth above, Detective Baker testified regarding the investigation of defendant and defendant's statements on August 18, 2009, and SA Greenmun testified regarding the forensic analysis of defendant's computer media, respectively.  Several images and videos of child pornography found on defendant's computer media were introduced into evidence and published to the jury.  Testimony established that numerous images and videos depicting minors engaged in sexually explicit conduct were found in defendant's three computers, an iPhone, two external hard drives, and at least one compact disk.  A list of internet search terms related to child pornography was discovered on one of defendant's computers (Govt. Ex. 44).

In Pruitt, the defendant "seemingly took no affirmative steps to save images onto his computer hard drives"; rather, "investigators discovered child-pornography images in the computer's cache and in the unallocated spaces on the computer's hard drive."  Pruitt, 2011 WL 1380687 at *2.  The case before this Court involved much stronger evidence of the knowing receipt, possession, storage, and manipulation (as well as the creation) of child pornography by defendant using a file sharing program, three different computers, user-created computer folders, two external hard disk drives, at least one compact disk, and an iPhone digital camera device.  The videos of child pornography charged and referenced

9

in Counts One, Two and Three of the indictment (Govt. Exs. 45, 46, and 47) were downloaded onto defendant's computers on July 25, 2008, July 26, 2008, and June 19, 2009, respectively.  Doc. 90 at 155-56.  Moreover, these downloads were performed using the internet and the LimeWire file sharing program.  Doc. 89 at 218-220.  In his testimony, defendant admitted previewing the child pornography video named in Count Two of the indictment (Govt. Ex. 46).  Doc. 90 at 129.  He acknowledged that he was familiar with LimeWire and that he had used it for several years.  Doc. 90 at 130.  He knew he was receiving child pornography while using the LimeWire file sharing program as early as 2008 and that these "accidental" downloads happened over a dozen times.  Doc. 90 at 61, 128.  He never told his wife about receiving child pornography on LimeWire, and never reported these "accidental" downloads to the police, even when specifically asked pornography by Detective Baker on August 18, 2009.  Doc. 90 at 124-25.  During cross-examination, defendant explained that "it did not seem that would be a golden moment to bring it up" during his August 18, 2009 interview with Detective Baker.  Doc. 90 at 123.  Rather, he "took care of [the child pornography] by deleting it."  Doc. 90 at 125.

As stated above, defendant testified that he discovered that he had received child pornography in 2008.  When asked what steps he took "to prevent child porn from appearing from legitimate LimeWire searches," defendant testified that he made a list of search terms to avoid[1] (Govt. Ex. 44), and by doing so, he was able to reduce the volume of "child porn" from coming into his computer.  Doc. 90 at 62-64.  Thus, even crediting defendant's testimony on this point, he continued to download material from LimeWire with

---

[1]   Defendant acknowledged that he "wrote down things to remind [himself] of what [he] didn't want," including the term "kids need sex too."  Doc. 90 at 97-99.  This explanation defies common sense.

10

full knowledge that there was a substantial likelihood that he would continue receiving child pornography and would have to continue to "check" and delete it. Doc. 90 at 66-68.

Thus, defendant's protestations in both his testimony and his motions (Doc. 106) that he never knowingly downloaded or possessed child pornography ring hollow in light of the substantial evidence to the contrary that was admitted at trial. For example, defendant possessed a compact disk with an "untitled" folder containing images and videos of child pornography that was "burned" (created) on December 30, 2005, over two years before he claimed that his first "very nasty experience"[2] with this type of material occurred. Doc. 90 at 162. In burning this disk, defendant would have had to knowingly receive, possess, manipulate and store these images and videos, just as the jury through its verdict found that he did with the images and videos charged in the indictment.

Viewing the evidence through the prism of the legal standards set forth above, there can be no question that the weight of the evidence established that defendant was guilty of knowingly receiving and possessing child pornography.

---

[2]   Doc. 90 at 63.

WHEREFORE, the United States respectfully requests that the Court deny defendant's motion for a new trial and motion for judgment of acquittal (Doc. 106).

Respectfully submitted,

ROBERT E. O'NEILL
United States Attorney

By: */s/ D. Rodney Brown*
D. RODNEY BROWN
Assistant United States Attorney
Florida Bar No. 906689
300 N. Hogan Street, Suite 700
Jacksonville, Florida 32202
Telephone No.: (904) 301-6300
Facsimile No.: (904) 301-6310
rodney.brown@usdoj.gov

U.S. v. ROBERT ALLAN COWANCase No. 3:09-cr-387-J-32MCR

## CERTIFICATE OF SERVICE

    I hereby certify that on April 28, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

        Noel G. Lawrence, Esq.

        */s/ D. Rodney Brown*
        D. RODNEY BROWN
        Assistant United States Attorney